(C.D. 3871)

J. E. BERNARD & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 23, 1969)

*Schwartz & Lidstrom* (*Earl R. Lidstrom* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Arthur E. Schwimmer* and *Thomas A. S. Fernandes*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The merchandise covered by this protest, invoiced as Jiffy-Pots in various sizes, was assessed with duty under item 790.40 of the Tariff Schedules of the United States at the rate of 8 per centum ad valorem, as planting pots in part of peat moss.

Plaintiff originally claimed the merchandise properly free of duty under item 480.80 of said schedules as other substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers. At the trial, plaintiff alternatively claimed that the merchandise is entitled to entry free of duty under item 666.00 of the schedules as agricultural and horticultural implements not specially provided for. In its brief, however, plaintiff presses only its alternative claim under item 666.00, *supra*, and plaintiff's original claim under item 480.80 of the schedules is deemed abandoned.

The statutes here under consideration are as follows:

Classified under item 790.40, TSUS:

Planting pots in part of peat moss_ 8% ad val.

Claimed under item 666.00, TSUS:

Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, and agricultural and horticultural implements not specially provided for, and parts of any of the foregoing _____ Free

The record consists of two exhibits, the testimony of one witness on behalf of the plaintiff, and one exhibit on behalf of the defendant. Plaintiff's exhibit 1 is a sample of one size and shape of Jiffy-Pot as packed and sold in stores in the United States (R. 12). Plaintiff's exhibit 2 is page 9 of "Technical Bulletin No. 100", a brochure published by Jiffy-Pot Company of America, the ultimate consignee herein, illustrating Jiffy-Pots in various sizes (R. 12). Defendant's exhibit A is page 3 of said bulletin which states that Jiffy-Pots "are pots made of peat moss * * *" (R. 29).

Plaintiff's witness, Mr. Montague C. Wright, stated that he has been general manager of the Jiffy-Pot Company of America, heretofore identified as the ultimate consignee of the involved merchandise. He testified that his company imports "Jiffy pots which are flower pots made of peat moss" from Norway and Denmark (R.3). The imported Jiffy-Pots were sold through distributors in the United States and Canada, said distributors in turn sold them to commercial growers (R. 3). The witness stated that he had visited the manufacturing facilities of Jiffy-Pots in Norway and Denmark and had observed the materials used to manufacture them (R. 5-6). He further testified that Jiffy-Pots are used by commercial growers of plants who start plants in a Jiffy-Pot either directly from seed or by transplanting seedlings into the pot. The plants are grown for several weeks, then the Jiffy-Pots and the plants are transplanted into "another medium", for example, larger pots, greenhouse benches, or home owners' gardens. Jiffy-Pots are used because the roots grow right through the walls of the pot (R. 12). The purpose of using the Jiffy-Pots is to do away with having to remove the pot, and therefore eliminating root disturbance of any kind. The substance of the pot nourishes the plant. For this reason, plants grow faster and bigger (R. 13). Plaintiff's witness testified that there is no other known use for Jiffy-Pots other than for growing plants (R. 16). He further stated that Jiffy-Pots are made of sphagnum peat, which is a "variety of peat moss" which becomes peat moss as it disintegrates. Mr. Wright further stated that between 65 and 70 percent of that material makes up the composition of Jiffy-Pots. Ground wood pulp and some chemicals, fertilizer material used as plant nutrients, make up the rest of the composition of Jiffy-Pots (R. 19-20).

Mr. Wright described a peat bog from which the peat used to make Jiffy-Pots is taken, as a swampy area where moss, the sphagnum peat moss, grows on the surface. During each succeeding season, a new crop grows which pushes down the decayed roots and vegetation of the old one down below. As the sphagnum peat moss goes down below over the centuries, it becomes "peat" as deep as 15 to 20 feet. There are various grades of peat. For horticultural purposes, which

include the material used in Jiffy-Pots, peat below the surface up to 2 meters, which is about 6½ feet, is used. The material "way down below", which is hard and known as "peat", is used as fuel (R. 22–23).

Plaintiff's witness stated that in the horticultural field there is a difference between "peat moss" and "peat". He testified that "peat moss" is the plant that grows on the surface and that the material used by the grower is called horticultural "peat". The material used to manufacture Jiffy-Pots is obtained from the "lower strata", which the witnesses called "peat", and not from the material at the top, which he called "peat moss" (R. 23). Mr. Wright stated that "They skim off the top 6 inches, and throw it away, and then cut the next 2 meters of peat"; that the first half foot is what horticulturists or the manufacturers of the product would call peat moss, and that the next 6 feet would be "peat" (R. 23–24).

On cross-examination, plaintiff's witness agreed that Jiffy-Pots are used to put seeds and plants into, and the pots are then put into the ground. He stated that he did not "believe" that other manufacturers of Jiffy-Pots used the top layer of a peat bog in producing their product. The witness further testified that, to the home gardener, Jiffy-Pots are sold as composed of what is commonly known as "peat moss". However, to the commercial grower, Jiffy-Pots are sold as composed of what is commonly known as "peat" (R. 24–27).

There appears to be no doubt but that the involved Jiffy-Pots are "agricultural and horticultural implements". As established by the record, their only use is in the handling and nourishment of seedlings and immature plants, which, in our opinion, are agricultural or horticultural pursuits. See in this connection, *United States* v. *S.S. Perry*, 25 CCPA 282, T.D. 49395 (1938), and *Wilbur-Ellis Co.* v. *United States*, 26 CCPA 403, C.A.D. 47 (1939). However, subpart C, headnote 1, preceding item 666.00 of the Tariff Schedules of the United States, provides that this provision does not apply to "any of the articles specially provided for elsewhere in the tariff schedules." Accordingly, the question here for determination is whether the imported merchandise is properly dutiable, as classified under item 790.40 of the tariff schedules as "Planting pots in part of peat moss".

Plaintiff in this case contends that the imported Jiffy-Pots are not in part of peat moss; that they do not contain peat moss, but that they are made from "peat". Defendant, on the other hand, contends that the substance or material from which the Jiffy-Pots are made is commonly known as peat moss or peat, and that the distinction sought to be made by plaintiff's witness between "peat moss" and "peat" is a distinction not made in the statutory provision under which the merchandise was classified.

It is well settled that tariff acts are written in the language of commerce, and that tariff terms are construed according to the commercial understanding of the term employed, which is presumed to be the same as that within the common understanding. *Floral Arts Studio et al.* v. *United States*, 46 CCPA 21, C.A.D. 690 (1958), and *Hartmann Trunk Co.* v. *United States*, 27 CCPA 254, C.A.D. 95 (1940). Likewise, it is well established that the common meaning of tariff terms is a matter of law to be determined by the court. Further, the court in determining the common meaning of tariff terms, may draw upon common knowledge, rely upon its own understanding of the term used, or have recourse to authorities such as technical works, dictionaries and other aids in determining the meaning of the tariff term involved.

In the above connection, we note the references to "peat" and "peat moss" as found in the following encyclopedias and dictionaries:

*Websters New International Dictionary*, second edition, 1934, page 1800:

> peat * * * 2. Any mass of semicarbonized vegetable tissue formed by partial decomposition in water of various plants, esp. mosses of the genus *Sphagnum*. * * * Peat varies in consistency from a turf to a slime. As it decomposes its color deepens, old peat being dark brown or black, and keeping little of the plant texture.

> According to its formation, it is know as *bog peat* (mosses), heath peat, meadow peat (grasses and sedges), forest peat or wood peat (trees), and sea peat (seaweeds). * * *

> peat moss. 1. Any moss from which peat has formed; specif., sphagnum moss. 2. A peat bog; *also, peat itself.* * * * [Emphasis added.]

*Funk & Wagnalls New Standard Dictionary* (1939):

> peat, n. 1. A substance consisting of partially carbonized vegetable material, the result of the decomposition of various plants (sometimes aquatic) in the presence of water: found usually in marshes, bogs, etc. At the surface it contains considerable water, but deeper it is more compressed and gradually approaches the condition of lignite. * * * The so-called meadow-peat, or muck, is used as top-dressing on farms. In bog-p. [peat], certain mosses, particularly sphagnum, form a large part of the vegetation; in meadow-p. [peat], grasses and sedges; in heath-p. [peat], various ericaceous plants; and in wood-p. [peat], trees.

> Mosses . . . account for the bulk of the peat, but plants of all kinds, including even pine, oak, and other trees, contribute. * * * 2. A block or brick of peat pressed and dried for fuel.

> peat-moss, n. 1. Moss, especially of the genus *Sphagnum*, that enters largely into the composition of peat in the north of Europe. 2. [Local, Eng.] A peat-bog; as, the peat-mosses of the Scottish border.

*Columbia Encyclopedia* (1950) :

> peat, carbonized, decayed vegetation, found in bogs in various parts of the Temperate Zone. It is formed by the slow decay of successive layers of aquatic and semiaquatic plants, e.g., sedges, reeds, rushes, and mosses. Sphagnum moss is usually the chief constituent of the peat found in northern regions. *Two varieties of commercial peat are usually distinguished as peat moss and fuel peat. The peat moss derived from sphagnum is used in agriculture for poultry and stable litters and as a soil conditioner and mulch.* \* \* \* [Emphasis added.]

*Funk & Wagnalls Standard Dictionary*, 1963 edition, page 928:

> peat n. 1. A substance consisting of partially carbonized vegetable material, chiefly *mosses*, found usually in bogs. [Emphasis added.]

> peat moss 1. A moss that enters largely into the composition of peat. \* \* \*

*Bailey's Cyclopedia of American Horticulture* (1901 ed.), page 1252:

> Peat is a kind of soil formed by the partial decay of plants in the swamps of the temperate zone. It is a standard potting material in greenhouse work for certain classes of plants, as ferns, orchids, heaths, rhododendrons \* \* \*. Peat bogs represent the decay of many kinds of aquatic and marsh plants, but chiefly *sphagnum* \* \* \*. This moss grows upward and decays below. \* \* \* [Emphasis added.]

In our opinion, the above authorities indicate that moss, chiefly of the sphagnum species, decays after many years over the ages and forms soil or earth commonly known as peat or peat moss. The deeper or lower strata of earth or soil is used for fuel purposes and is called fuel peat. The higher strata of earth or soil is called "peat" or "peat moss" and is used in horticulture for poultry and stable litters and as a soil conditioner and mulch. Further, it appears that, commercially, the decayed moss, which has become soil or earth commonly known as "peat" or "peat moss", is dug out in the form of bricks, dried, and then processed. Accordingly, it appears that both the terms "peat" and "peat moss" refer to the earth or soil formed by the decayed matter over the years, and, therefore, there is no distinction in common usage between the two terms. The authorities above noted indicate that the term "peat" is a generic term and refers to any peat whether composed or formed by mosses, grasses, sedges, trees, seaweeds, etc., whereas, the term "peat moss" refers specifically to peat, or soil or earth formed chiefly from mosses. Research and lexicographic authorities indicate that peat bogs composed of mosses are by far the most common, and therefore, the peat dug out of such bogs is commonly referred to as "peat moss" or just "peat".

Support for our conclusion that the terms "peat" and "peat moss" are used rather interchangeably may be found in prior decisions of this and our appellate court, predicated in the main upon the testimony of credible witnesses familiar with these products.

In *Peat Products Corp.* v. *United States*, 17 Cust. Ct. 133, C.D. 1033 (1946), affirmed in 35 CCPA 84, C.A.D. 375 (1947), the involved merchandise consisted of peat moss of the grade known as poultry peat moss. It was assessed under the *eo nomine* provision for peat moss in paragraph 1548 of the Tariff Act of 1930. Plaintiff therein claimed free entry under paragraph 1685 of the tariff act as fertilizers. The record in the case discloses that some eleven expert witnesses used the terms "peat" and "peat moss" interchangeably. In affirming the collector's classification, the court (C.D. 1033), page 136, stated:

> The evidence consists of the testimony of 11 witnesses and 5 exhibits—a sample of the poultry grade of peat moss, a sample of the horticultural grade not in controversy, a laboratory report of the analyses of these two exhibits, *a sample of peat moss in its natural condition as it is dug from the bog * * *.* [Emphasis added.]

In commenting upon the testimony of the president of the importing firm, the court, page 136, further stated:

> * * * *He produced a sample * * * of peat moss as it is removed from his bog, and testified that it is dug from the bog in large chunks * * *.* [Emphasis added.]

In *Peat Import Corp.* v. *United States*, 4 Cust. Ct. 181, C.D. 319 (1940), peat moss also assessed under paragraph 1548 of the Tariff Act of 1930, was claimed free of duty under paragraph 1685 of the act as fertilizer. There, too, some twelve expert witnesses, among whom were professors and researchers in "peat" or "peat moss", used the terms interchangeably. In its decision therein, the court cited the Summary of Tariff Information (1929), wherein at page 2122, it is stated:

> * * * Peat moss is partly decayed vegetable or plant matter found in bogs. * * *

> * * * Peat moss *deposits* in the United States are estimated at * * *. [Emphasis added.]

Recourse to the above authorities and the cases cited herein and by the defendant in its brief persuades us, as heretofore noted, that the material or substance commonly known as peat or peat moss is the soil or earth formed by the decayed moss over long periods of time, which is commercially dug out in the form of bricks. The testimony of plaintiff's witness supports this conclusion. He stated that in the composition of Jiffy-Pots, there is sphagnum peat, which "is a variety of moss that becomes peat" (R.19). He further stated that to the home

gardener, Jiffy-Pots are sold as being composed of a substance commonly known as "peat moss", whereas, to the commercial grower, Jiffy-Pots are sold as composed of a substance commonly known as "peat" (R.27). He stated further that "Jiffy-pots * * * are flower pots made of peat moss" (R.3). Moreover, defendant's exhibit A, published by the ultimate consignee herein, describes Jiffy-Pots as "pots made of peat moss * * *. Specifically, Jiffy-Pots are made of 70% sphagnum peat moss * * * and 30% virgin wood fiber." Furthermore, defendant's exhibit A states that "all of the peat moss used in making Jiffy-Pots is sphagnum of the finest horticultural grade." Plaintiff's exhibit 1 describes the Jiffy-Pots as "Peat Moss Flower Pots."

In our opinion, the term "peat moss" was used by Congress in its broadest common meaning. If plaintiff's construction of the term "peat moss" were accepted, item 790.40 of the tariff schedules under which the merchandise was classified would, in our opinion, be a useless and ineffective tariff enactment, as it does not appear that any planting pots are made of "undecomposed" moss.

For all of the reasons heretofore stated, we hold the involved Jiffy-Pots properly dutiable as classified under item 790.40 of the Tariff Schedules of the United States at the rate of 8 per centum ad valorem, as "Planting pots in part of peat moss."

The protest herein is overruled. Judgment will issue accordingly.