(C.D. 4012)

JIFFY POT OF AMERICA *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 5, 1970)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The merchandise here involved, described on the invoice as "Jiffy-7-Peat Pellets," was assessed with duty under item

790.40 of the Tariff Schedules of the United States at the rate of 8 per centum ad valorem, as planting pots in part of peat moss.

Plaintiff in its protest claims the merchandise is properly free of duty under item 480.80 of said tariff schedules as "those grades of all substances * * * used chiefly for fertilizers." Alternatively, plaintiff claims that the merchandise is properly dutiable under item 192.50 of the tariff schedules at the rate of 25 cents per ton as peat moss.

The pertinent provisions of the Tariff Schedules of the United States are as follows:

Classified under:

790.40      Planting pots in part of peat moss_____ 8% ad val.

Claimed under:

Those grades of all substances (other than are described in the foregoing items of this part) used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers:

       *      *      *      *      *      *      *

480.80      Other _____ Free
192.50      Peat moss_____ 25¢ per ton

The record consists of the testimony of one witness for the plaintiff, four exhibits for the plaintiff and four exhibits for the defendant.

Exhibit 1 is a cellophane package containing twelve "Jiffy-7-Peat Pellets," which pellets were identified as the same as the merchandise before the court. The pellets are round in shape, about ¼ inch in thickness and approximately 1¾ inches in diameter. Exhibit 2 is a copy of the United States patent covering Jiffy-7-Peat Pellets. Illustrative exhibit 3 was a tray containing Jiffy-7-Peat Pellets which have been soaked in water to show their condition as expanded. Exhibit 4 is a two-page pamphlet entitled "Jiffy-7 Technical Information," which, on page 2 thereof, indicates the chemicals contained in the imported merchandise, broken down by proportion.

Exhibit A is a booklet issued by Jiffy-Pot Company of America, "Technical Bulletin No. 110," to help customers know how to use the various products referred to therein, including the merchandise at bar. Exhibit B, as introduced at the trial, was a plant contained in soil, which, in turn, was contained in a pot. Exhibit C is a retail package of Jiffy-Peat Pellets. Exhibit D was a plant embedded in an expanded peat pellet, both contained in a pot.

Subsequent to trial, exhibits 2, 3, and 4, and exhibits A, B, C, and D were misplaced or lost. The parties herein have tendered substituted plaintiff's exhibits 2 and 4 and defendant's exhibits A and C.

Mr. Montague C. Wright, general manager of Jiffy Pot of America, importer of Jiffy-Pots and Jiffy-7-Peat Pellets, testified for the plaintiff. He stated that he was responsible for the purchasing and marketing of the products handled by his company, and, specifically that he was familiar with Jiffy-7-Peat Pellets, having seen their manufacture several times at the location of the manufacturer. It appears that Jiffy-7-Peat Pellets are made by breaking bales of peat into a fine form, adding chemicals that provide the major and minor elements for plant growth and mixing the ingredients to a fluffy consistency. The substance is then dropped into tubes having the diameter of the finished product and which are lined with plastic net, and compressed by a plunger with 20 tons of pressure into the final form. The net is then snipped off and heat sealed.

The witness testified that "technically" peat is different from peat moss. He stated that the moss is what grows on the surface of the ground, as a live plant, and that when it dies in a swampy, marshy area, and new growth grows on top of that, the plants from the previous seasons are pushed into the ground. It is this pressure from above "that converts the moss into the material we call peat." He then stated that, "There are other kinds of peat, *other than this moss peat* * * *, so we use the expression 'peat'." [Italics ours.] The chemicals added in the process of manufacture of the imported product, are these which are basic sources for nitrogen, phosphorus, and potash, which are the the major nutritional requirements of a plant, and that there are also a number of minor ones which are derived from "materials like limestone, round [sic] limestone, and mixed fertilizers."

Before a Jiffy-7-Peat Pellet can be used, water has to be applied to it so that it will expand approximately six or seven times the height of the dry pellet, which is a "sort of an uncompression of the previous compression." After that, a hole is made in the wet pellet, and a seed, seedling, or cutting is inserted into the pellet, and thereafter the seed or plant grows. The combination of peat and chemicals in the Jiffy-7-Peat Pellets supplies the nourishment that plants need to grow. The record discloses that plaintiff sells most of the pellets to commercial growers, and that it also packages the pellets into small packages for resale to home gardeners.

Sphagnum peat moss is sold in stores, "compressed somewhat to make a ball out of it" two to two and one-half times the natural weight. The pellets are compressed twelve times normal weight. A demonstration was made of the expanding capacity of the pellet by soaking a pellet in water. It appears that after an interval of three minutes, the pellet increased about four times in size. The pellet is then ready to accommo-

date plants. The witness would not call the pellet a "planting pot" but stated it was a "peat pellet."

Plaintiff's witness testified that he had sold fertilizer in the past, but that he had not "sold peat moss as anything, peat or peat moss, for 20 years." He stated that the peat moss contains fertilizer elements but in a much less state than a highly concentrated chemical would. The witness agreed that peat moss provides moisture, is a soil conditioner, acts as a fertilizer to provide plant food, and that it is sold to nurseries as a fertilizer. He also agreed, as set forth in defendant's exhibit A, that the "Jiffy-7's" only have enough nutrient for about three weeks and thereafter fertilizer had to be added, though the Jiffy-7 Pellet itself still existed.

A plant growing in an expanded pellet like the Jiffy-7-Peat Pellet, which in turn had been placed in a pot, was introduced in evidence as illustrative exhibit D. The portion of the exhibit from which the plant is growing and which is contained inside of the pot, resembles an expanded Jiffy pellet.

Essentially, determination of the issue in this case depends upon the resolution of two points: First, whether the imported pellets may be construed as planting "pots" and secondly, whether they are planting pots "in part of peat moss." Plaintiff contends that the imported pellets are not "pots" and also, that these "peat" pellets are compounds of peat and not of peat moss; that "peat" differs from "peat moss" and that, accordingly, the items are not in part of "peat moss" and, therefore, were improperly classified as planting pots in part of peat moss.

In classification cases, it is axiomatic that there is a presumption that the classification made by the customs official is correct, and the burden is upon the party seeking to overcome that presumption to prove otherwise. *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735 (1960). Defendant herein maintains that the plaintiff has not only failed to rebut the presumption attaching to the classification made but that the record herein establishes that the merchandise was correctly classified.

Item 790.40 of the tariff schedules under which the imported items were classified, requires only that the merchandise consist of planting pots which are made in part of peat moss. While we do not find any dictionary definitions for the term "planting pots," it would seem that such expression contemplates containers used for planting of seeds or plants which can thereafter be placed directly in the ground. The conclusion that the imported items are planting "pots" for tariff purposes, is supported, in our opinion, by reference to the *Summaries of Trade and Tariff Information*, Schedule 7, Vol. 8, p. 65 (1968), wherein the following appears:

Peat moss is composed of partially decayed moss and marshland vegetation. Planting pots in part of peat moss are ordinarily made of a mixture of tightly compressed sphagnum peat moss (about 70 percent) and paper pulp (about 30 percent), which is used as a binder.

In use planting pots are filled with soil and seeds, roots, or plants. After germination of the seed or budding of the root, the pot is placed directly in the ground. The plant roots penetrate the pot wall freely and enter the surrounding soil. The pot then becomes a part of the growing medium. The planting pots are treated with nutrients to offset the loss of nitrogen from the soil that results from the breakdown of the paper pulp in the pot wall during the growing period. The pot walls are highly porous and permit aeration of the soil, which supplies oxygen to the roots of the plants. In addition, the pot walls, being made of peat, retain water so that a uniform supply of moisture is available to the plant roots. *In recent years a compressed and dehydrated pot (which already contains the soil) has been developed in Norway. It is circular and less than ½ inch thick. When placed in water it grows to a height of about 2½ inches, and the seed is then placed in the pot. An industry source has predicted that this type of pot (known as a pellet) will eventually displace the conventional type.* [Italics ours.]

Plaintiff maintains that the Jiffy pellet in its imported condition is a solid mass of material, and that it does not possess the bottom and sides of a "pot." Certainly this particular item is unlike an article that is more traditionally known as a "pot." However, we are persuaded that planting "pots" as contemplated by Congress and as covered by the relevant tariff schedule, need not be in any specific shape or form so long as they perform their intended purpose. Item 790.40 of the tariff schedules provides for planting pots in part of peat moss. Accordingly, by the very definition in the item under which the merchandise was classified, the walls and bottom of the "planting pot" cannot be such as may be found in a traditional "pot." Note the *Summaries of Trade and Tariff Information,* Schedule 7, *supra,* "In recent years a compressed and dehydrated pot (* * *) has been developed * * *." Exhibit 2 describes the imported pellet as, "A briquette of a compressed plant growth medium (e.g. peat moss) which expands when contacted by water to a porous loose material of increased volume is enclosed within a sleeve of water-resistant material which is collapsed against the briquette *to provide a reduced external size for shipment and storage,* but which is expansible * * * for use in starting and growing plants." [Italics supplied.] It would accordingly appear that the imported articles appear in a compressed form simply for shipment and storage purposes. However, they still remain "planting pots."

The references in exhibit A further support a finding that the imported pellets are "planting pots." In part, the booklet in question contains the following with respect to the "Jiffy-7-Peat Pellets":

(a) "* * * It combines the function of a *pot* and a potting soil into one unit * * *." (Page 3.) [Italics ours.]

(b) "The Jiffy-7 is simple to use. It is only necessary to place the pellets close together * * * and to water them * * *. It is then ready for planting. * * *" (Page 3.)

(c) "Jiffy-7 peat pellets have a carefully balanced amount of major and minor elements added to the peat moss of which they are made. * * *" (Page 13.)

It may further be observed that statements contained in exhibit C indicate, in our opinion, that plaintiff itself regards the "Jiffy-7 Pellets" as "planting pots," and in such respect within the contemplation of the tariff item under which they were classified. Statements on the package in which they are enclosed are, *inter alia*, as follows:

"Jiffy-7 peat pellet"

"Plant *Pot*'N All" [Italics supplied.]

"Use Jiffy-7s, just as you would use any other pot filled with moist soil."

Plaintiff's witness testified to the effect that "peat" and not "peat moss" was used in the manufacture of the imported articles. Accordingly, the contention is made that the involved merchandise is not properly classifiable as planting pots "in part of peat moss." However, exhibit 2 makes frequent reference to the composition of the involved product as being either of "peat moss" or a substantial amount of peat moss and certain added ingredients. For example, said exhibit, with reference to Jiffy-7-Peat Pellets, states in part: "Briquette assemblies are prepared as illustrated in Figs. 1–3. Ground sphagnum *peat moss* dried to a moisture content of 18–20% by weight is combined with 6 kg. of dolomitic lime and 2 kg. of mixed fertilizers (* * *) per 300 kg. of peat * * *, the peat moss and other ingredients being thoroughly mixed * * *."

In our opinion, plaintiff's contention that the involved merchandise is composed of "peat" and not "peat moss" and that, therefore, the imported pellets are not in part of peat moss, is untenable. In the recently decided case of *J. E. Bernard & Co., Inc.* v. *United States*, 63 Cust. Ct. 45, C.D. 3871 (1969), which involved so-called "Jiffy-Pots," the same proposition as set forth here, making a distinction between "peat" and "peat moss," was advanced by the plaintiff in that case. The same witness who testified for the plaintiff in this case

also testified in the *Bernard* case, *supra*, to the same effect that the Jiffy-Pots there in issue did not contain "peat moss" but that they were made from "peat" and should not be classified as planting pots in part of peat moss. This court in the *Bernard* case, *supra*, after citing definitions of "peat" and "peat moss" as found in a number of lexicographic authorities, held that there was no distinction in common usage between the terms "peat" and "peat moss" and that the Jiffy-Pots there involved were properly classifiable under said item 790.40 of the tariff schedules as "planting pots in part of peat moss." We are of opinion that Congress in enacting item 790.40 of the tariff schedules for "planting pots in part of peat moss," intended to make no distinction between "peat" and "peat moss." For this reason and for other reasons as advanced here and in the *Bernard* case, *supra*, we hold the involved Jiffy pellets also properly classifiable under item 790.40 of the tariff schedules as "planting pots in part of peat moss."

In passing, we make reference to the alternative claims of the plaintiff. It is claimed that the involved pellets should be classified under item 480.80 of the tariff schedules, *supra*, as "those grades of all substances (* * *) used chiefly for fertilizers or chiefly as an ingredient in the manufacture of fertilizers * * *." In the case at bar, there is no evidence that the imported pellets are chiefly used as an ingredient in the manufacture of fertilizers.

Further, the evidence adduced by plaintiff's witness in support of the claim that the merchandise is a grade of such substances as are chiefly used as fertilizers, is insufficient to establish its contention. Plaintiff had the burden of showing what *grade* of peat moss was imported and that the peat moss was chiefly used as a fertilizer. Cf. *Half Moon Manufacturing & Trading Co. et al.* v. *United States*, 9 Cust. Ct. 37, C.D. 656 (1942), and *Peat Import Corp.* v. *United States*, 4 Cust Ct. 181, C.D. 319 (1940). No such showing has been made. The fact that the pellets in question consist of substances which may act as a fertilizer is immaterial, because the determining factor in the classification of the merchandise at bar is its chief use, not any secondary use. The evidence adduced shows a chief use for the pellets as a final product other than as a fertilizer.

The case of *Britton & Company* v. *United States*, 41 Cust. Ct. 64, C.D. 2021 (1958), cited by the plaintiff in its brief is, in our opinion, distinguishable. There, the merchandise consisted of briquettes, made from ground wood charcoal. The court held that the grinding of the charcoal and forming it into briquettes with starch as a binder, did not change it into something more than wood charcoal. Here, the manufacture of the peat or peat moss together with the added chemicals into Jiffy-7-Peat Pellets has effected such a change in their character-

istics or use as to indicate that the pellets have become something more than fertilizer.

Plaintiff has likewise failed to establish its claim under item 192.50 of the tariff schedules for the involved merchandise as "peat moss." The record establishes that the merchandise contains a significant quantity of peat moss (cf. General Headnote 9(f)(iv) of the tariff schedules). The peat moss combined with certain chemicals has been manufactured into Jiffy-7-Peat Pellet to be used as planting pots. As such, it is not "peat moss" but something more than "peat moss" and cannot be considered the latter for tariff purposes. The *eo nomine* provision in item 192.50 is for peat "moss," and not for articles manufactured therefrom.

For all of the reasons heretofore advanced, we hold the involved Jiffy-7-Peat Pellets properly classifiable under item 790.40 of the tariff schedules at the rate of 8 per centum ad valorem as "planting pots in part of peat moss." The protest is overruled.

Judgment will issue accordingly.