(C.D. 4738)

KIMBALL SYSTEMS, INC. *v.* UNITED STATES

---

*Tariff Classification Study* (1960), *Submitting Report*, page 8.

Court No. 73-6-01546

(Decided March 17, 1978)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*Mark K. Neville* and *Susan Handler-Menahem*, trial attorneys), for the defendant.

RE, Chief Judge: The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from the Netherlands. The merchandise, described as "Tie-Line" fasteners, was invoiced as two and three-eighths inch and one inch "Nylon Tie-Lines."

The merchandise was classified by the Customs Service as sew-on fasteners, under item 745.63 of the Tariff Schedules of the United States [TSUS], as modified by T.D. 68–9, and consequently was assessed with duty at 27.5% ad valorem. Plaintiff contests that classification and claims that the merchandise should be properly classified as other plastic articles not specially provided for under item 774.60, TSUS, as modified by T.D. 68–9, with a duty rate of 8.5% ad valorem.

The defendant urges that the customs classification is correct and should be sustained. In the alternative, however, defendant claims that the merchandise is dutiable under item 745.65, TSUS, as modified by T.D. 68–9, as clasps other than the articles provided for in item

745.63, TSUS, with a duty of 13.5% ad valorem. Plaintiff asserts further that if the court concludes that the merchandise is to be classified as clasps, the defendant's alternative claim under item 745.65 of the tariff schedules is the proper classification.

The pertinent provisions of Schedule 7 of the TSUS are as follows:

Classified by the Customs Service:

PART 7. – BUTTONS, BUCKLES, PINS, AND
OTHER FASTENING DEVICES; * * *

Subpart A. – Buttons, Buckles, Pins, Hooks
and Eyes, and Slide Fasteners

\*    \*    \*    \*    \*    \*    \*

Clasps, handbag and similar frames in-
corporating clasps, and snap fasteners;
all the foregoing and parts thereof:
Valued not over 20 cents per dozen
pieces or parts:

| | | |
|---|---|---|
| 745. 63 | Sew-on fasteners, and parts thereof_____ | 27.5% ad val. |

Defendant's alternative claim:

| | | |
|---|---|---|
| 745. 65 | Other_____ | 13.5% ad val. |

Plaintiff's claimed classification:

PART 12. – RUBBER AND PLASTICS PRODUCTS

\*    \*    \*    \*    \*    \*    \*

Subpart D. – Articles Not Specially
Provided For of Rubber
or Plastics

\*    \*    \*    \*    \*    \*    \*

774. 60  Articles not specially provided for, of
rubber or plastics:

\*    \*    \*    \*    \*    \*    \*

| | |
|---|---|
| Other_____ | 8.5% ad val. |

Certain material facts are not in dispute. The parties have agreed that the merchandise consists of plastic "T" shaped tie-line fasteners which are produced in clips. These fasteners are inserted into garments, cloth or other material, by use of a special device which contains a needle with a groove running the length of the needle. It is agreed that this fastening procedure is used in lieu of hand or machine sewing to fasten labels to garments, and to pair and fasten two or more articles, such as shoes. It is also admitted that when the merchandise was first marketed by plaintiff, one of its intended uses was to replace string tags and the sewing needle procedures by which string tags were previously attached.

Although plaintiff concedes that the merchandise consists of "fasteners," it argues that they do not fall within the common meaning of the term "clasps" because the fasteners are not releasable. Plaintiff also argues that the fasteners are not bought, sold or known as clasps. Even if the fasteners are found by this court to be clasps, plaintiff asserts that they cannot be sew-on fasteners because they are sewn *into* or sewn *through* materials, and, like thread, are only the *means* of sewing on fasteners such as buttons, rather than the fasteners themselves.

In its effort to support its contentions plaintiff introduced the testimony of Mr. Walter C. Rabe, the Kimball Systems product manager during the period in question. Although he was in charge of marketing the imported tie-line fasteners with paper tags manufactured by Kimball, his expertise in the use of plastic fasteners was limited to those used in retail tagging operations only. According to Mr. Rabe, plastic fasteners and the Dennison-patented attachment gun replaced the twine string tags and sewing needle procedure for reasons of economy and security. He testified that he never heard these plastic fasteners referred to as either clasps or sew-on fasteners. Furthermore, he did not consider these fasteners to be "articles which are sewn on." Finally, Mr. Rabe noted that the fasteners are not removable, or are removable with great difficulty. On cross-examination, Mr. Rabe admitted that his expertise in sewing was limited solely to the extent that Kimball Systems products are sewn into garments.

In support of the customs classification the defendant maintains that the merchandise falls within the common meaning of the term "clasps," which requires only that it fasten or hold items or parts of items together. Releasability, the defendant contends, is irrelevant in defining a clasp. In the event the court deems releasability to be significant, the defendant indicates that the fasteners are releasable and reusable.

In the view of the defendant, the fasteners are sewn-on fasteners since sewing merely requires an interlocking which will keep the fabrics together rather than the production of a stitch. Even if a stitch were to be required, the government contends that the insertion of the fastener does in fact produce a stitch. In this sewing operation, the defendant submits that the plastic filament can be analogized to the "thread," while the "T" bar at each end forms the clasp which is attached to the article by means of a needle. If the court does not regard the described procedures as sewing, the defendant relies on its characterization of the merchandise as a clasp, and claims the alternative classification as "other" clasps.

The defendant has not merely relied upon the statutory presumption of correctness, but has introduced the testimony of four expert

witnesses in support of the customs classification. Mr. Gerard Merser, general manager of the Fastener Division of the Dennison Manufacturing Company, testified that he was in charge of the new products development that created the "Swiftach" system and fasteners. He supervised worldwide manufacturing and marketing of these fasteners and attachment guns. The "Swiftach" system he described included the patented machine used to affix the very fasteners in this case, as well as the Dennison-made fasteners identical to those in issue. As a result of the marketing and manufacturing activities of the Dennison "Swiftach" machine and fasteners, Mr. Merser was without question qualified as an expert in an industry known as the plastic sewing fastener industry. As an expert he testified that the use of the Dennison gun and plastic fasteners could be considered a sewing operation. Furthermore, although the company did not use the term "sew-on" fasteners in its advertising, the merchandise nonetheless could be regarded as "sew-on" fasteners. He also noted that the fasteners could be considered releasable.

Mr. Merser enumerated the various uses of the fasteners that he developed. These uses include:

1. sewing tags on garments;
2. sewing pleats in drapes and parts of filter bags in air conditioners and heaters;
3. suturing cadavers subsequent to autopsies and animals in veterinary practice;
4. joining or pairing items;
5. identifying fish in biological industries;
6. fastening buttons;
7. sewing linings in garments;
8. sewing linings in various aircraft.

The defendant's other witnesses fully substantiated the testimony of Mr. Merser. Mr. Paul Kirschner, general manager in charge of design and merchandise for Sharilove Fashions, stated that his company used plastic fasteners in almost 500,000 garments each year. These fasteners were used to fasten inside facings to outer portions of the garment as well as to attach tags and labels to the sleeves.

Defendant's third witness, Mr. Irwin Kahn, a professor at the Fashion Institute of Technology, and an expert in the sewing industry, testified that the process of affixing the plastic fasteners, using the Dennison machine, was a sewing operation. He explained his conclusion by defining sewing as "[t]he placing together of two materials or more, and the keeping of them in place to each other by the introduction of a third substance drawn by a needle." Mr. Kahn testified categorically that sewing only requires that a needle effectuate an interlocking of fabrics rather than a "stitch," as was asserted by the plaintiff.

Defendant's final witness was the security manager for the Abraham & Straus stores, Mr. Raymond Devine, a former New York City Police Department detective who was an expert in the field of retail security. Mr. Devine testified that the plastic fasteners used to attach tags to garments were removable by hand manipulation, and by the use of hatpins and retractable ball point pens. He also testified that the fasteners were reusable, citing as examples shoplifters, and "refund workers" who remove high-priced tickets from garments and attach them to lower-priced garments which they then return to the store for a refund.

From dictionaries published over the period from 1893 through 1976 the defendant has also presented a summary of thirteen definitions of the noun "clasp." In essence, these definitions indicate that a clasp fastens two things or parts together.

As in all customs cases, plaintiff has the burden of overcoming the statutory presumption of correctness which attaches to the government's classification pursuant to 28 U.S.C. § 2635. To overcome this presumption, the plaintiff must prove that the customs classification was wrong and that its claimed classification is correct. *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970); *Technical Tape Corp.* v. *United States*, 55 CCPA 38, C.A.D. 931 (1968).

The question presented, therefore, may be said to be whether plaintiff has borne its burden of proving that the imported fasteners have been improperly classified as sew-on fasteners, and that they should have been lawfully classified as other plastic articles not specially provided for. Only if the court finds that the imported merchandise has been improperly classified by the customs officials will it be necessary to consider the defendant's alternative claim.

Plaintiff contends that the tie-line fasteners do not fall within the common meaning of the term "clasp" because they are not releasable and are not generally bought, sold or referred to as clasps. It is well established, however, that the common meaning of a tariff term is a question of law to be decided by the court. *United States* v. *National Carloading Corp.*, 48 CCPA 70, C.A.D. 767 (1961); *J. E. Bernard & Co., Inc.* v. *United States*, 63 Cust. Ct. 45, C.D. 3871 (1969). It is equally well established that the common meaning is "a matter of law to be determined by the court on the basis of its own understanding of what that meaning is; and * * * in reaching its conclusion * * * the court may use as an aid relevant lexicographic and other standard authorities." *Burrows Equipment Company* v. *United States*, 62 Cust. Ct. 681, 684, C.D. 3848, 300 F. Supp. 455, 456–57 (1969). See materials cited in *Borneo Sumatra Trading Co., Inc.* v. *United States*, 64 Cust. Ct. 185, 188, C.D. 3980, 311 F. Supp. 326, 329 (1970).

The court has examined the common meaning of the term "clasp," as indicated by the standard lexicographic authorities. Most sources show clearly that the primary function of a clasp is simply to fasten two parts together. For example, the *Funk & Wagnalls New Standard Dictionary of the English Language*, 1937 edition, contains a definition of the term "clasp" which was used in the earlier 1913 edition:

> *"clasp, n.* 1. A fastening by which things or the parts of a thing are bound or held together; also, any instrument or bond of connection, as a tendril, the hook that fastens on an eye, a grappling-iron, etc."

This definition is similar to the dictionary definitions cited to the court by the defendant. It is significant that no mention of releasability is made in any of the definitions. It is not unreasonable to assume that these definitions were considered by the Congress in employing the term "clasp" in the successive enactment of the Tariff Acts of 1909, 1913, 1922, 1930, and in the pertinent tariff schedules. Thus, despite plaintiff's arguments to the contrary, the clear lexicographic authorities indicate that releasability is not required for an article to be considered a clasp. According to most dictionaries, the only requirement is that the item fasten or join two parts or things.

In ascertaining the meaning of a term used in the tariff statutes, in addition to lexicographic definitions the court may rely upon and accord great weight to expert testimony. See *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co.*, 18 CCPA 279, T.D. 44450 (1930). Even if it were to be assumed in the present case that the lexicographic authorities were inconclusive, plaintiff has not submitted convincing expert testimony to overcome the presumption of correctness that attaches to the classification of the customs officials and the supporting evidence introduced by the defendant.

The only expert testimony presented by plaintiff was that of Mr. Walter C. Rabe, one of plaintiff's employees, whose expertise was limited exclusively to fasteners used in retail tagging operations. His recollection, that he had never heard the merchandise referred to as clasps or sew-on fasteners, is deserving of little weight in determining the common meaning of the term "clasp." Since Mr. Rabe's experience was confined to retail tagging and sewing procedures he was not qualified to testify as to the uses of these fasteners beyond retail tagging. He likewise was not qualified to testify as to their nomenclature insofar as it related to those broader applications. His limited experience and expertise seriously affect the probative value or weight to be accorded his opinion testimony. In view of these limitations, Mr. Rabe's testimony is insufficient to support plaintiff's assertion that the fasteners are sewn "in" rather than "on" the items.

This distinction was not supported, and is deemed to be without merit.

‹ Mr. Rabe's testimony was fully refuted, if not totally negated, by the evidence presented by the defendant. The defendant's first witness, Mr. Gerard Merser, an expert in the development of the plastic fastener and attachment system, is a widely recognized expert in the entire plastic fastener industry. He is thoroughly familiar with the myriad uses of the imported merchandise, and the procedures or system by which it is attached. His testimony, that the merchandise consists of sew-on fasteners affixed by a sewing procedure, was reliable, convincing and persuasive. The same may be said for the testimony of Mr. Irwin Kahn, an expert in the sewing industry, who characterized the process of fastener affixation as a sewing procedure.

In addition to the statutory presumption of correctness attaching to defendant's classification of tie-line fasteners under item 745.63, the defendant has introduced expert testimony and lexicographic authorities. Plaintiff's assertion that these fasteners are not bought, sold or known as "clasps," and its reliance on two characteristics of its fasteners to distinguish them from "clasps" (viz., that they are sewn *in* rather than sewn *on* and are not releasable) have not overcome this statutory presumption of correctness. Rather, the court in ascertaining the common meaning of the tariff term "clasp," has concluded that releasability is not an essential element of a "clasp." In addition, the court has found plaintiff's sewn *in*-sewn *on* distinction to be unsupported by the evidence and without merit.

Since the plaintiff has not overcome the statutory presumption of correctness, and the court has concluded that the merchandise has been properly classified under the tariff schedules, it is not necessary to consider defendant's alternative claim.

In view of the foregoing, it is the determination of the court that plaintiff has not succeeded in proving that the imported merchandise has been unlawfully classified by the customs officials. Consequently, plaintiff's protest is denied, and defendant's classification of the merchandise as sew-on fasteners under item 745.63, TSUS, as modified by T.D. 68–9, with duty at the rate of 27.5% ad valorem is sustained.

Judgment will be entered accordingly.