(C.D. 3884)

C. J. TOWER & SONS OF BUFFALO, INC., ET AL. v. UNITED STATES

United States Customs Court, Second Division

(Decided September 15, 1969)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs. *William D. Ruckelshaus*, Assistant Attorney General (*Andrew P. Vance*, trial attorney), for the defendant.

Before RAO and FORD, Judges; RAO, C.J., concurring

FORD, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, involve the proper classification of certain gas fired

stoves and parts used for curing tobacco. Duty was assessed at the rate of 12.5 per centum ad valorem under item 661.70 of the Tariff Schedules of the United States.

Plaintiffs claim the merchandise is properly entitled to entry free of duty under item 666.00 which provides for agricultural implements, not specially provided for, and parts thereof.

Counsel for the respective parties have stipulated to the fact that said stoves are designed and exclusively used on farms for curing tobacco.

In a recent decision of this court which considered the classification of certain wire guard frames in the shape of a basket and used over a stove for curing tobacco the court held they were not entitled to free entry under said item 666.00 since there was no evidence that they were used on a farm. *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 61 Cust. Ct. 360, C.D. 3632 (1968). The record herein does establish the use on the farm.

The decisions under prior acts involving agricultural implements and particularly the case next cited, *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472 (1915), have more or less limited such articles as "pertain to human and incidental animal substance—the substantial requirements of life (food) and possibly man's comfort (raiment)  * * *." We do not believe the court in the *Boker* case, *supra*, which involved hedge shears even remotely considered whether the growing of tobacco and its subsequent curing was within the scope of the provision of paragraph 391 of the Tariff Act of 1913 involved therein. This is clearly evidenced by the following statement made by the court in its concluding paragraph:

> Apt illustration is afforded by this appeal. The articles are so-called "hedge shears." Hedges are purely ornamental, whether on the farm or about the city home. They do not contribute to the subsistence of man or beast directly or indirectly. Whether or not these so-called "hedge shears" are within paragraph 391 depends upon the evidentiary fact of whether or not they are chiefly used for trimming purely ornamental hedges and shrubbery or the subsistence productions of the agriculturist. * * *

The court may take judicial notice of the fact that tobacco is cultivated and grown on a farm in a manner similar to other agricultural crops. Tobacco growing is a recognized agricultural pursuit which falls under the jurisdiction of the Secretary of Agriculture. See 7 U.S.C. 502, 511(b) and 1313(b). We are of the opinion that tobacco growing and the resultant tobacco leaves are the production of the agriculturalists as indicated in the *Boker* case, *supra*. Accordingly, any implement which is used on the farm for the purpose of production or packing and

preparing the agricultural product for market is deemed to fall within the purview of item 666.00, *supra*, as claimed herein.

We also note with interest that subsequent to the entry of the involved merchandise, the provisions of item 666.00, *supra*, were amended by the Technical Amendments Act of 1965, PL 89–241 and included the language "on-farm equipment for the handling or drying of agricultural or horticultural products." While this language is not involved herein, it is indicative of the liberal intent of Congress in enacting item 666.00, *supra*. The fact that horticultural articles were also included therein is also indicative of this and results in an approach which is in substance different from the decision in the *Boker* case, *supra*.

We therefore sustain the protests.

Judgment will be entered accordingly.

## CONCURRING OPINION

RAO, Chief Judge: In our decision in *C.J. Tower & Sons of Buffalo, Inc.* v. *United States*, 61 Cust. Ct. 360, C.D. 3632 (1968), we noted not only that it had not been established that the articles were chiefly used on farms or by farmers but that it had not been shown that they were used in the production of food or raiment for man, citing *United States* v. *Boker & Company*, 6 Ct. Cust. Appls. 243, T.D. 35472 (1915). That case applied a limited definition to the term "agricultural implements," stating:

> While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.

> The language of paragraph 391 illustrates and confirms this view. Thus while "wagons and carts" are within the paragraph—such as are used in the cultivation and removal of the crops by the farmer—certainly those words would not include buggies or automobiles—pleasure vehicles—nor would they extend to the wagon or cart of the contractor entirely unused on the farm. There is no implement enumerated within the paragraph that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits.

The *Boker* case, which arose under the Tariff Act of 1913, has been cited in numerous decisions under subsequent tariff acts, for example, *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835 (1930); *United States* v. *S.S. Perry*, 25 CCPA 282, T.D. 49395 (1938);

*Sortex Co. of North America* v. *United States*, 56 CCPA 41, C.A.D. 951 (1969). The *C.J. Tower* case, *supra*, arose under the Tariff Act of 1930.

The instant case is governed by the Tariff Schedules of the United States, which contains somewhat different language than in previous acts. Item 666.00 provides:

> Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, and agricultural and horiticultural implements not specially provided for, and parts of any of the foregoing _____ Free

In the Tariff Classification Study of 1960, the following statement is made in regard to this provision (Schedule 6, part 4, subpart C, p. 265):

> Paragraph 1604 covering agricultural implements is in certain respects very broadly construed and includes a wide variety of articles. This provision, however, includes a proviso that "no article specified by name in Title I shall be free of duty under this paragraph". In addition to this limitation the term "agricultural implements" has been interpreted as applying only to implements chiefly used in pursuits that minister to human and, incidentally, animal subsistence; to the requirements of life (food) and possibly men's comfort (raiment); and, hence, has been held not to embrace so-called horticultural implements. This proviso and the attempts to distinguish horticultural from agricultural implements have produced classification confusion and anomalous results. In many instances distinctive differences between products do not exist, and the administrative practices which have developed are in practical effect closer to the concept of "actual use" than to the correct concept of "chief use".

It is clear that it was intended to broaden the old provisions by adding horticultural implements. The question remains as to whether it was also intended to broaden the scope of the term "agricultural implements" to include articles used in tobacco growing and curing. While the latter may be an agricultural pursuit, its product does not contribute to man's food or raiment.

Plaintiff has called to the court's attention several rulings of the Bureau of Customs classifying articles used in curing tobacco as free of duty under item 666.00, *supra*. Abstracts of unpublished decisions, 101 Treas. Dec. 75, 78, T.D. 66–18(7); 101 Treas. Dec. 125, 126, T.D. 66–38(6); 100 Treas. Dec. 923, 924, T.D. 56551(5). In the first cited abstract, it is stated as a reason for the classification that "tobacco curing is considered an agricultural pursuit rather than a manufacturing or industrial pursuit."

Counsel for the Government in the instant case states in a request for permission not to file a brief:

> * * * It is our position that gas fired stoves which are designed and exclusively used on the farm for curing tobacco are classifiable under item 666.00, TSUS, as claimed by plaintiff.

In view of the principle that where there is doubt as to the construction of a statute, it should be resolved in favor of the importer, I concur in the holding that the within merchandise is entitled to free entry under item 666.00. *American Net & Twine Company* v. *Worthington*, 141 U.S. 468 (1891); *Downing & Co. (Inc.)* v. *United States*, 12. Ct. Cust. Appls. 451, T.D. 40614 (1925).