**BORDER BROKERAGE COMPANY, Inc.**

v.

**UNITED STATES.**

**C.D. 4089; Protests 66/77339–26317 and 69/5209–27944 against the decision of the district director of customs at the port of Seattle.**

United States Customs Court,
First Division.

Oct. 14, 1970.

Glad & Tuttle, San Francisco, Cal. (George R. Tuttle and Hudson F. Edwards, San Francisco, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Herbert T. Posner and Susan C. Cassell, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ, and RE. Judges.

RE, Judge:

The legal question presented in these two protests, consolidated for purposes of trial, pertains to the proper classification, for customs duty purposes, of certain merchandise described on the invoices as plastic planting bullets. The merchandise was imported from Canada in 1966 and 1968. It was classified by the district director as "other articles not specially provided for, of rubber or plastics" under item 774.60 of the Tariff Schedules of the United States, and duty was assessed at 17 per centum ad valorem. Plaintiff contends that the plastic planting bullets should be classified under item 666.00 of the tariff schedules as "agricultural and horticultural implements not specially provided for", and should therefore enter duty free.

Item 774.60 of the Tariff Schedules of the United States, pursuant to which the merchandise was classified, provides as follows:

Schedule 7, part 12:

"Subpart D.—Articles Not Specially Provided
For, of Rubber or Plastics

Articles not specially provided for, of rubber or plastics:

\*     \*     \*     \*     \*     \*     \*     \*

774.60      Other ............................... 17% ad val."

Plaintiff claims that the merchandise is dutiable pursuant to item 666.00 under schedule 6, part 4, which provides as follows:

"666.00 Machinery for soil preparation and cultivation, agricultural drills and planters, fertilizer spreaders, harvesting and threshing machinery, hay or grass mowers (except lawn mowers), farm wagons and carts, milking machines, on-farm equipment for the handling or drying of agricultural or horticultural products, and agricultural and horticultural implements not specially provided for, and parts of any of the foregoing....Free"

The record in this case consists of the testimony of two witnesses for the plaintiff, one witness for the defendant, and two exhibits of the imported plastic planting bullets, differing only in their size.

■ It is well established and beyond question that the classification of the collector is presumed to be correct. F. H. Kaysing v. United States, 49 CCPA 69, 71, C.A.D. 798 (1962); United States v. Colibri Lighters (U.S.A.) Inc., 47 CCPA 106, 109, C.A.D. 739 (1960); McKesson & Robbins, Inc. v. United States, 27 CCPA 157, 158, C.A.D. 77 (1939). Additionally, as stated by the Court of Customs and Patent Appeals, "the importer has the burden of proving not only that the classification made by the collector is wrong, but he must further show affirmatively the correctness of his own contention." United States v. Lineiro, 37 CCPA 5, 10, C.A.D. 410 (1949). On the dual burden of plaintiff, see also United States v. Albrecht et al., 27 CCPA 112, 117, C.A.D. 71 (1939); Joseph E. Seagram & Sons, Inc. v. United States, 30 CCPA 150, 157, C.A.D. 227 (1943); W. T. Grant Company v. United States, 38 CCPA 57, 60, C.A.D. 440 (1950).

■ Since the use of the implement determines its classification, to be reclassified under item 666.00 of the tariff schedules as an agricultural implement, the chief use of the merchandise must be clearly established. United States v. Boker & Co., 6 Ct.Cust.Appls. 243, 245, T.D. 35472 (1915). In the case of A. N. Deringer, Inc. v. United States, 48 Cust.Ct. 138, 139, C.D. 2326 (1962), which involved the proper classification of ladders used for fruit picking, neither plaintiff nor defendant disputed the fact that "the term 'agricultural implements,' as used in paragraph 1604 [Tariff Act of 1930] . . . is a designation by use; and that the classification of imported merchandise as agricultural implements is dependent upon its chief use." This principle had been enunciated earlier by the Court of Customs and Patent Appeals in United States v. S. S. Perry, 25 CCPA 282, 285, T.D. 49395 (1938) wherein the court quoted from the case of United States v. Spreckels Creameries, Inc., 17 CCPA 400, T.D. 43835 (1930) which held: "However, it is well established upon both reason and authority that in customs law the classification of merchandise as an agricultural implement is dependent upon the *chief* use of such merchandise." [Emphasis in original.]

■ Rule 10(e) (i) of the General Interpretative Rules of the Tariff Schedules of the United States provides that:

"a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined."

Chief use is a question of actual fact which must be established on the basis of positive testimony representative of an adequate cross-section of the country. L. Tobert Co., Inc. et al. v. United

States, 41 CCPA 161, 164, C.A.D. 544 (1953); Voss Int. Corp. v. United States, 61 Cust.Ct. 123, 127, C.D. 3544, 287 F.Supp. 989 (1968).

■ Applying these principles to the case at bar, since the plaintiff claims reclassification under a provision for which chief use must be proved, it is incumbent upon the plaintiff to show not only the chief use of the plastic planting bullets, but also that the plastic planting bullets were chiefly used in the manner demonstrated in the United States at or immediately prior to the date of importation. United States v. S. S. Perry, 25 CCPA at 287. If the chief use of the controverted merchandise can also be demonstrated to come within the scope of an agricultural implement, within the meaning of item 666.00 of the tariff schedules, the presumption of the correctness of the district director's findings will have been overcome.

Two witnesses testified for the plaintiff in an effort to establish both chief use, and the fact that the plastic planting bullets are agricultural implements. Mr. Ian Howard, a Canadian who is an executive of the Canadian manufacturer of the merchandise at bar, personally supervised the manufacture and sale of the merchandise in the United States. Mr. Howard also engaged in the initial production and design of the plastic planting bullets with the cooperation of Mr. John Walters, a director of the University of British Columbia, Honey Research Forest. Mr. Walters has had extensive research experience and presently operates a self-supporting tree farm on a 20-mile forest in Canada. He invented the plastic planting bullets and has observed their use in the United States. Mr. Walters also testified that he has lectured on the use of these containers before agricultural groups.

■ Mr. Howard has observed the bullets in issue being used for the planting of Douglas fir and hemlock, but his personal observation has been limited to British Columbia. Although the defendant acknowledges that Mr. Howard is an executive concerned with the designing of the bullets, since he has never seen the merchandise used in the United States the defendant properly asserts that Mr. Howard cannot testify to chief use in the United States. Defendant therefore maintains that this distinguishes the case at bar from Voss Int. Corp. v. United States, 61 Cust.Ct. 123, 287 F.Supp. 989, wherein the court said: "Executives concerned with designing, framing specifications, ordering, importing, selling, distributing, and promoting an article have to know its chief uses and may properly give testimony as to such uses." 61 Cust.Ct. at 127, 287 F. Supp. at 993. Chief use, however, is unquestionably a question of "actual fact", and a "witness must have factual knowledge and experience to support his testimony." *Ibid.* In the *Voss Int. Corp.* case the court quoted from the case of Diamond Trading Co., Ltd., et al. v. United States, 54 Cust.Ct. 70, 74, C.D. 2510 (1965) wherein it was stated:

"While the testimony of a single competent witness may suffice, he must be qualified, and his testimony must be convincing and not negatived by the samples themselves. United States v. S. S. Perry, 25 CCPA 282, T.D. 49395; United States v. Gardel Industries, 33 CCPA 118, C.A.D. 325. * * * "

■ In the case at bar, it is the opinion of the court that the second witness for the plaintiff, Mr. Walters, comes within the description of such a "qualified" and "convincing" witness referred to in the *Diamond Trading Co.* case. Although the witness in the *Voss Int. Corp.* case was an "executive" of the manufacturing company, in the corporate sense of the word, the description given of the qualified witness pertains more to his qualifications and familiarity with the product rather than to the specific position that he occupies in the company. Although Mr. Walters was not employed by the Canadian manufacturer of the instant merchandise, he collaborated closely with Mr. Howard, the company executive, and together they

worked on the initial development and design of the product. Clearly, therefore, the testimony of both witnesses must be evaluated and considered together.

As for Mr. Walters, it was he who invented the controverted merchandise in 1950 to overcome the physiological deterioration of root systems by the then prevalent method of transplanting seedlings. Although not in fact an executive of the company, he, surely more than any other person, knew of the purpose and use to be served by the plastic planting bullets. Mr. Walters described their use in the growing of tree seedlings, and the transplanting of these seedlings after their germination and growth in the nursery. Not only did he invent the plastic planting bullets in 1950, but he also tested them from 1956 to 1961. He personally observed their use for the growth of Douglas fir and hemlock in Oregon and Washington in the United States.

Defendant contends that observation of use of the merchandise in only one section of the United States does not prove chief use, for "chief use is a question of actual fact which * * * should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation." L. Tobert Co., Inc. et al. v. United States, 41 CCPA 161, 164, C.A.D. 544 (1953). Although the defendant's statement of the law is clearly correct, it is to be noted that in the case at bar there is no evidence that the plastic planting bullets are used for any other purpose than in the germination and transplanting of tree seedlings. In this respect, the testimonial evidence is supported by an examination of the bullets themselves. Their design and construction appear to indicate their use in the growth of trees.

The court, therefore, is of the opinion that the statements of this court in the A. N. Deringer, Inc. case, pertaining to chief use are equally applicable to the case at bar. In that case the merchandise consisted of wooden ladders of unusual design used to pick fruit. The use was shown in New England alone. The court did not require any further proof of chief use stating "[f]rom the testimony given by the plaintiff's witness as to the reasons and purposes for the particular design and construction of the imported ladders * * * we think it is a fair inference that their chief use in one part of the country would be the same as in any other part of the country." 48 Cust.Ct. at 140–141. The court added that the "reasonableness of such an inference under such circumstances was well stated in the case of United States v. F. W. Woolworth Co., 23 C.C.P.A. (Customs) 98, 100, T.D. 47765" and quoted the following paragraphs from that case:

"We are not unmindful of the rule that in order to establish 'chief use' the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether 'chief use' has been properly established depends upon the issues and the evidence in each case."

"We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule." 48 Cust.Ct. at 141.

The plaintiff states in its brief that "[a]lthough, the testimony of the three witnesses in this case was limited to areas in Western or Northwestern United States, the nature of the imported articles is so unique that its use in one area of the country would be representative of its use in all other areas." (Plaintiff's brief, pp. 21–22) In the A. N. Deringer, Inc. case the defendant argued that New England was not a large area but a "small * * * area

of the United States." What was stated by the court in that case in response to that assertion is equally applicable here as to the area referred to as "Western or Northwestern United States". Thus the court therein observed:

> "We may take judicial notice of the fact that the New England area, whether it be considered large or small by comparative geographical standards, is a place having numerous fruit tree orchards and that fruit growing is an active agricultural pursuit there." *Ibid.*

The court also stated that:

> "The way in which fruit grows on trees in New England is, without doubt, the way fruit grows on trees elsewhere in the United States, and, insofar as the picking of the fruit is concerned, the reasons which caused the design of the ladders at bar and which result in their chief use as fruit-picking ladders in New England are just as cogent and applicable elsewhere. Under these circumstances, the chief use of such ladders in New England can properly be deduced to be representative of the chief use of such ladders elsewhere in the United States." *Ibid.*

The plaintiff also relies heavily upon the character of the article itself to demonstrate its chief use. The court agrees that the examination of the exhibits, coupled with the testimony of the witnesses describing their use, indicates clearly the use for the plastic planting bullets to be implements for the germination and transplanting of tree seedlings. On the question of chief use, the Court of Customs Appeals, commenting upon the Supreme Court case of Magone v. Wiederer, 159 U.S. 555, 16 S.Ct. 122, 40 L.Ed. 258 (1895), referred to the well established rule that chief use "may be shown either by the character of the article itself, as imported * * * that is to say, that it may be brought within the terms of the statute either by evidence manifested by the article *per se* or given at the trial." United States v.

Lyon & Healy, 4 Ct.Cust.Appls. 438, 442, T.D. 33873 (1913).

Moreover, "if it should appear that in some places in the United States the article was chiefly used for another purpose this fact would not of itself be sufficient to determine that it was not chiefly used for agricultural purposes in the United States." United States v. S. S. Perry, 25 CCPA at 290. While it is true that there was testimony given by Mr. Howard that some of the plastic planting bullets were sold to grow trees for soil erosion, which defendant contends not to be an agricultural pursuit, the record does not indicate whether this planting was to be within the United States.

■ Although in the case at bar chief use was only demonstrated in the Western and Northwestern United States, an application of the principles applied in the *A. N. Deringer, Inc.* and the *F. W. Woolworth Co.* cases permits the court to find herein that trees are grown throughout the United States in the same manner, and that the chief use of the plastic planting bullets, the imported merchandise in these protests, "in one part of the country would be the same as in any other part of the country." A. N. Deringer, Inc. v. United States, 48 Cust.Ct. at 141. See International Distributors, Inc. v. United States, 57 Cust.Ct. 369, 374, C.D. 2822 (1966) wherein this court said that under certain circumstances, "the chief use nationwide can be proven inferentially * * *." See also Kubie & Co. v. United States, 12 Ct.Cust.Appls. 468, T.D. 40668 (1925); Empire Findings Co., Inc. v. United States, 44 Cust.Ct. 21, C. D. 2148 (1960).

Under the circumstances presented in this record the court finds that the chief use of the plastic planting bullets is that of a planting container for tree seeds during their germination and initial growth. This fact is clearly established by the testimony of the witnesses for the plaintiff and a physical examination of the exhibits.

A further issue before the court is whether the plastic planting bullets are agricultural or horticultural implements within the scope of item 666.00 of the tariff schedules. It has been testified that the chief use of the merchandise is for the germination and transplanting of tree seedlings. Defendant contends that the planting bullets may be used for any type of tree planting and that "[n]ot every type of planting is either agricultural or horticultural, both of which terms connote cultivation for either 'necessaries' or for ornamentation." (Defendant's brief, p. 6) Defendant further asserts that planting for reforestation and conservation are non-agricultural types of tree planting. (Defendant's brief, p. 7) It is to be noted, however, that no testimony was offered to the effect that the planting bullets are presently used for these purposes. All the testimony was directed to the use of the planting bullets for the growth of evergreens, namely Douglas fir and hemlock, which are used primarily for lumber and are also used for ornamental purposes.

■ The basic principle of statutory construction is stated in James S. Baker (Imports) Co. et al. v. United States, 61 Cust.Ct. 305, 307, C.D. 3619, 292 F.Supp. 1014, 1015 (1968), namely, that "it is the intention of the legislature which governs the interpretation of its enactments. United States v. Damrak Trading Co., Inc., 43 CCPA 77, C.A.D. 611; United States v. Clay Adams Co., Inc., 20 CCPA 285, T.D. 46078." In Wilbur-Ellis Co. v. United States, 26 CCPA 403, 407, C.A.D. 47 (1939), the Court of Customs and Patent Appeals stated that the provisions of paragraph 1604 of the Tariff Act of 1930 which pertained to agricultural implements "were intended 'to encourage agriculture by according free importation to agricultural implements,' and should be given a broad and liberal construction so as to carry out the evident purpose of the Congress. United States v. American Express Co., 12 Ct.Cust.Appls. 483, T.D. 40693; United States v. S. S. Perry, 25 C.C.P.A.

(Customs) 282, T.D. 49395. The statutory term 'agricultural implements' should be given a broad, not a narrow, meaning. United States v. S. S. Perry, *supra*."

In the *S. S. Perry* case, this court, citing the case of `United States v. American Express Co. case, *supra*, stated that "the courts have always given agricultural free list provisions like the one at bar [Paragraph 1604 of the Tariff Act of 1930], and many other tariff enactments which were intended to benefit agriculture, a very broad and liberal construction so that the evident purpose of Congress especially to favor agriculture might be carried out." 25 CCPA at 286.

It is also important to note that the merchandise at bar was invented and designed to improve upon the existing method for the germination and transplanting of tree seedlings used for the production of lumber, admittedly an agricultural product. In United States v. Boker & Co., 6 Ct.Cust.Appls. 243, 244–245, T.D. 35472 (1915) the concept of agriculture was described as follows:

"While, therefore, 'agriculture' in its broad application may extend into and include elements of horticulture, viticulture, arbor culture and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment) * * *. There is no implement enumerated within the paragraph [391 of the Tariff Act of 1913] that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits." [Emphasis in original.]

This concept has been expanded by the court in the case of C. J. Tower & Sons of Buffalo, Inc., et al. v. United States, 63 Cust.Ct. 119, C.D. 3884 (1969) wherein stoves used for curing tobacco were held to be agricultural implements be-

cause "tobacco is cultivated and grown on a farm in a manner similar to other agricultural crops. Tobacco growing is a recognized agricultural pursuit which falls under the jurisdiction of the Secretary of Agriculture." In the case at bar the chief use of the planting bullets has been demonstrated to be the germination and growth of tree seedlings, in particular, Douglas fir and hemlock which are lumber trees. It may be noted that lumber is, indeed, a product which contributes to the comfort of man.

The witness for the defendant, Mr. Joseph A. Witt, assistant director of the University of Washington Arboretum, testified that the planting of Douglas fir and hemlock could be agricultural if used for lumber, or horticultural if used for ornamental purposes. These trees are evergreens and are, at times, used for ornamental purposes. The former distinction between horticultural and agricultural implements need no longer be made. Before the passage of the Tariff Schedules of the United States in 1962, the United States Tariff Commission recommended that agricultural and horticultural tools be placed together "to eliminate purported distinctions between horticultural and agricultural hand tools * * *." James S. Baker (Imports) Co. et al. v. United States, 61 Cust.Ct. 305, 307, C.D. 3619, 292 F.Supp. 1014, 1015 (1968). The court further stated in the James S. Baker (Imports) Co. case that "[b]y including horticultural tools in this item [648.55], and in other items of the tariff schedules [among which was included item 666.00], the Tariff Commission has sought to do away with the problem of when an article is chiefly used in agriculture, as opposed to its use in other allied pursuits."

The record of the instant case reveals extensive testimony by Mr. Walters that the plastic planting bullets were used in a manner derived from horticultural techniques. Further, it appears that the soil mixture placed in the containers was "mixed to specifications laid down by the University of California for horticultural use." The seedlings are fed and watered by "techniques common to greenhouse practice." The containers for the tree seedlings themselves were adapted from containers used for greenhouse plantings. It was also made clear from the testimony that the plastic planting bullets had to be used in a greenhouse or nursery environment, and that, for the longest period of time, their main use was in the nursery. After the actual transplanting, the planting bullets would no longer be needed, and indeed, would be broken apart and pushed aside by the roots as the trees matured. From the unrefuted testimony there can be no doubt that the manner in which the merchandise at bar is used clearly conforms to horticultural techniques. It was noted also that the planting bullets could not be used outside of a nursery or greenhouse because of their small size necessitating the specific soil mixture and special care only available in the nursery or greenhouse.

It would do violence to the liberality of construction intended by the Congress were the phrase "agricultural and horticultural implements" to be construed restrictively, and to exclude from within its ambit implements which manifest or reflect advancements and improvements upon older techniques. As stated in Richardson Co. v. United States, 8 Ct. Cust.Appls. 179, 181, T.D. 37289 (1917), "[a]dvancement in methods of agricultural pursuits is of the most conspicuous examples of what may well become matters of common knowledge, and as such, of judicial notice." In the *Richardson Co.* case, carburetors designed and constructed as parts of certain farm tractors were held to have been entitled to free entry as parts of agricultural implements. In that case the court also had occasion to say that "[o]f course, there are exceptional uses of these as of all implements, but exceptional or incidental use has never been held to control classification." *Ibid.* As to "other possible uses" of imported merchandise, see American Astral Corporation v. United States, 62 Cust.Ct. 563, C.D. 3827, 300 F.Supp. 658 (1969).

The plastic planting bullets are used for the germination and growth of tree seedlings. No other use was contemplated. No other use was shown. They were specifically invented to aid in the growth of trees used for lumber. Conceivably, the planting bullets might be used for trees cultivated for other purposes, such as soil erosion, reforestation and conservation. Such another use, however, was not demonstrated. Although the court, in the *Boker & Co.* case restricted the term "agriculture" to the "production of food or raiment for man", it stated that "agriculture in its broad application may extend into and include elements of horticulture, viticulture, arbor culture and other *allied* industries and pursuits." [Emphasis in original.] It is also to be noted that since the enactment of the tariff schedules, no distinction has been made between agricultural and horticultural implements. As indicated previously, the *C. J. Tower & Sons of Buffalo, Inc.* case extended the notion of agriculture to the cultivation and growth of tobacco on farms "in a manner similar to other agricultural crops." It can be seen, therefore, that the judicial interpretation of the provision for agricultural implements has clearly been liberalized in response to the intent of Congress.

Some lexicographic definitions have also proven to be helpful in determining the breadth and scope of the word "agriculture". Funk & Wagnalls New "Standard" Dictionary of the English Language (1959) defines agriculture as:

"1. The cultivation of the soil for food-products or any other useful or valuable growth of the field or garden; tillage; husbandry; also, by extension, farming, including any industry practiced by a cultivator of the soil in connection with such cultivation, as forestry, fruit-raising, breeding and rearing of stock, dairying, market-gardening, etc."

Forestry is included as being within the meaning of agriculture. The Encyclopaedia Britannica (1970) at page 355 of Volume 1 states that:

"Experiments in many parts of the country proved that forests could be managed to produce annual crops through selective cutting. * * * In many places where millions of acres of forest land had become barren, research found ways of growing trees in nurseries, transplanting them, and making them live. Planting machines were developed to save as much as half the planting costs."

The Encyclopedia Americana, (International Edition 1969) also states that:

"The science of forestry includes a number of specialized fields. Silviculture is the growing of timber as a crop" and "[m]ost forest planting is now done with nursery grown stock." Vol. II. pp. 471, 478.

The importance of the proper utilization development and conservation of our natural resources is a matter of common knowledge. Colleges and universities have given new emphasis to research and studies designed to conserve and replenish man's valuable natural resources. Never has the interest and concern of industry and government in this vital area been more direct and more intense. Specifically relevant to the case at bar, in 1941 a major timber company began the practice of tree farming which has become widespread. It is also relevant to note, as stated in the *Encyclopedia Americana* above-mentioned, that "[t]he forest service tree planting program is the result of exhaustive study and experiments in methods of collecting seeds, nursery practices, and methods of direct seeding or the use of transplants." It would therefore seem reasonable that trees must be cultivated in a manner similar or analogous to other crops. The cultivation of trees in a nursery or tree farm is clearly embraced within the meaning of agriculture as described in dictionaries and technical sources.

Reference may be made to the case of J. E. Bernard & Co., Inc. v. United States, 63 Cust.Ct. 45, C.D. 3871 (1969) wherein merchandise described as Jif-

fy-Pots of peat moss was claimed to be agricultural or horticultural implements. These planting pots were used by commercial growers of plants who started the plants in the Jiffy-Pots either directly from seed or by the transplanting of seedlings. After the plants had grown for several weeks, both the Jiffy-Pots and the plants were transplanted into another medium. Although the court in that case held that the Jiffy-Pots were specifically provided for elsewhere in the tariff schedules and therefore precluded from classification under item 666.00, it, nevertheless, concluded that the planters were agricultural or horticultural implements. Specifically, the court stated that:

"There appears to be no doubt but that the involved Jiffy-Pots are 'agricultural and horticultural implements'. As established by the record, their only use is in the handling and nourishment of seedlings and immature plants, which, in our opinion, are agricultural or horticultural pursuits." 63 Cust.Ct. at 48.

A comparison and examination of the description and function of the Jiffy-Pots, in the *J. E. Bernard & Co.* case, and the plastic planting bullets, in the case at bar, will leave no doubt that the merchandise is the same in conception, purpose and use. The reasoning of the court in that case is equally applicable here, and, in the opinion of the court, the plastic planting bullets are likewise "agricultural and horticultural implements".

Having decided that the relevant pursuit in the case at bar is agricultural, there can be no doubt that the plastic planting bullets are "implements" within the meaning of the pertinent statutory provisions. In the case of United States

v. S. S. Perry, 25 CCPA 282, previously mentioned herein, the Court of Customs and Patent Appeals affirmed a holding of this court that poultry leg bands were agricultural implements. Most pertinent to our inquiry is the following statement of the court in that case:

"We think the term 'implements of any kind or description' as it appears in paragraph 1604 [Tariff Act of 1930] should not be given its narrowest meaning. Frequently, 'implement' is regarded as being synonymous with a tool or utensil used in manual work. The term has a broader meaning which we think should be accepted in arriving at the intent of Congress in the enactment of paragraph 1604." 25 CCPA at 286.

See also Wilbur-Ellis Co. v. United States, 26 CCPA 403, 408, C.A.D. 47 (1939).

The plastic planting bullets have been proven to have only one use, i. e., a planting container for tree seeds during their germination and initial growth, which has been shown to be a preliminary procedure in the cultivation of trees. Since the court has found that this activity is an agricultural pursuit, it is the determination of this court that the plastic planting bullets are "agricultural and horticultural implements" within the purview of item 666.00 of the Tariff Schedules of the United States.

In view of the foregoing, the court holds that the presumption of correctness that attaches to the district director's classification has been overcome, and that the controverted merchandise should be properly classified under item 666.00 of the Tariff Schedules of the United States as "agricultural implements not specially provided for", and should therefore enter duty free.

Judgment will issue accordingly.