(C.D. 4184)

INTERNATIONAL ARTWARE CORPORATION *v.* UNITED STATES

144

United States Customs Court, First Division

(Decided March 3, 1971)

*Baker, Hostetler & Patterson* (*H. Stephen Madsen* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Harold L. Grossman* and *Susan C. Cassell*, trial attorneys), for the defendant.

Before WATSON and MALETZ, Judges, and WILSON, Senior Judge

WILSON, Judge: Twelve protests were consolidated for the purposes of trial at the port of Cleveland, Ohio where the imported merchandise was entered. Counsel agreed that there are four specific items before the court and that plaintiff's exhibits 1 to 4 inclusive are representative of them. They are as follows:

| Item No. | Invoice Description | Exhibit No. |
|----------|---------------------|-------------|
| FL 1177_____ | Poly. Mistletoe Hanging Balls_____ | 1 |
| FL 2013_____ | Poly. Small Mistletoe Balls_____ | 2 |
| FL 1446_____ | Poly. Hanging Holly Balls_____ | 3 |
| FL 2749_____ | Crescent Mistletoe Arrangement_____ | 4 |

The merchandise was classified as "Christmas tree ornaments" under the Tariff Schedules of the United States (TSUS) item 772.95 and duty was assessed at the rate of 25½ per centum ad valorem.[1]

Plaintiff claims the merchandise is properly classifiable as "other than Christmas tree ornaments" under TSUS item 772.97 and assessed with duty at the rate of 17 per centum ad valorem. Plaintiff claims in the alternative under TSUS item 774.60 as "Articles not especially provided for, of rubber or plastics: * * * Other" with duty at the rate of 17 per centum ad valorem.

### STATUTES CONSIDERED

General Interpretative Rule 10(e)(i), TSUS provides:

"(e) in the absence of special language or context which otherwise requires—

"(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;"

Schedule 7, part 12, subpart C of the Tariff Schedules of the United States provides:

"Nativity scenes; Christmas ornaments; cruci-fixes; miniature altars, shrines, and holy-water fonts; religious figurines and statuettes; other religious articles; all the foregoing (not includ-ing any article provided for in part 6A of this schedule) of rubber or plastics:

| | | |
|---|---|---|
| 772.95 | Christmas tree ornaments_____ | 25.5% ad. val. |
| 772.97 | Other _____ | 17% ad val." |

---

[1] At the trial, defendant's counsel disavowed the classification under TSUS item 748.20 with duty at 28 per centum ad valorem with respect to the invoiced item FL 2749 described as "Crescent Mistletoe Arrangement" [ex. 4] in protest 67/90396 and as to the invoiced item FL 1177 described as "Poly. Mistletoe Hanging Balls" [ex. 1] in protest 67/41738, and contended that said merchandise is properly classifiable and dutiable under TSUS item 772.95 at the rate of 25½ per centum ad valorem. (R. 3.)

Schedule 7, part 12, subpart D of the Tariff Schedules of the United States provides:

"Articles not specially provided for, of rubber or plastics:

\*       \*       \*       \*       \*       \*       \*

774.60    Other _____ 17%  ad val.."

## THE ISSUE

Has the plaintiff established that the classification is erroneous and proved that its claimed classification is correct? Both of these factors must be established if the plaintiff is to prevail. See: *Bob Stone Cordage Co. et al*, v. *United States*, 51 CCPA 60, 65, C.A.D. 838 (1964); *Brown Boveri Corp., Gehrig Hoban & Co., Inc.* v. *United States*, 53 CCPA 19, C.A.D. 870 (1966); *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966); *Schlumberger Well Surveying Corp.* v. *United States*, 54 CCPA 37, 42, C.A.D. 901 (1967); *Technical Tape Corp.* v. *United States*, 55 CCPA 38, C.A.D. 931 (1968), wherein the court stated that plaintiff "is not required to prove his case to a moral certainty or beyond a reasonable doubt"; *DeHaan Company* v. *United States*, 55 CCPA 76, C.A.D. 936 (1968); *Hayes-Sammons Chemical Co.* v. *United States*, 55 CCPA 69, 72, C.A.D. 935 (1968).

## RÉSUMÉ OF THE RECORD

Plaintiff offered the oral testimony of Ronald Bernon and introduced six exhibits. (Two additional exhibits were marked for IDENTIFICATION and are *not* a part of the official record.)

The defendant offered neither oral, documentary nor other evidence.

Mr. Bernon, plaintiff's only witness, testified in substance as follows:

That the imported articles represented by exhibits 1 to 4 are used as Christmas novelty decorations which are hung in archways, doorways and from ceilings, fixtures and shades, so that someone may pass underneath them and be kissed; they are sold to flower, gift and bakery shops, department, drug, jewelry, variety and chain stores, and to supermarkets, as well as to jobbers and distributors who cater to the same class of trade; that he never saw any of these articles used as decorations on Christmas trees; they are sold throughout the United States; they are never sold for use as decorations on Christmas trees and are not adapted for use as Christmas tree ornaments.

Upon the facts of record, plaintiff contends (page 6 of its brief) that it "proves conclusively that the chief use of these items is *other than* as 'Christmas tree ornaments' " and (page 7 of its brief) that "the undisputed testimony is that the items are *not* used as 'Christmas tree ornaments.' " [Emphasis copied.]

The defendant contends that the "Plaintiff herein has failed to negate the presumptively correct chief use of these items as Christmas tree ornaments" and that "both the claim under item 772.97 as 'Other' Christmas ornaments, and the alternate claim under item 774.60, as 'Other' articles not specially provided for, of rubber or plastics, must be overruled." (Brief pp. 4, 8)

It is observed that TSUS item 772.95 provides for "Christmas tree ornaments" with duty at 25.5% ad valorem, whereas TSUS item 772.97 provides for "Other" with duty at 17% ad valorem. Schedule 7, part 12, subpart C provides for "Christmas ornaments." Congress evidently intended that there was a distinction between "Christmas ornaments" and "Christmas tree ornaments." The testimony of record distinguishes between articles represented by exhibits 1 to 4 as being "Other" than "Christmas tree ornaments" and those which *are* "Christmas tree ornaments." The exhibits 1 to 6, upon physical examination, as potent witnesses, support the distinction. The theory of "potent witness" has been the subject of many decisions. See: *United States* v. *Frankel Importing Co.*, 18 CCPA 188, T.D. 44378 (1930); *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932); *American Express Company* v. *United States*, 39 CCPA 8, C.A.D. 456 (1951); *United States* v. *University of Chicago Press*, 23 CCPA 38, T.D. 47685 (1935); *United States* v. *Sears, Roebuck & Co.*, 27 CCPA 235, C.A.D. 91 (1940); *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120 (1940); *Coro, Inc.* v. *United States*, 41 CCPA 215, C.A.D. 554 (1954); *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676 (1958); *United States* v. *Bruce Duncan Co., Inc., a/c Kasuga Sales, Ltd., National Silver Company*, 50 CCPA 43, C.A.D. 817 (1963); *Ignaz Strauss & Company, Inc.* v. *United States, United States* v. *Ignaz Strauss & Company, Inc.*, 54 CCPA 125, C.A.D. 923 (1967).

The court's examination of exhibits 1 to 4 results in its conclusion that such articles are not of the type, size, or weight of articles usually and ordinarily applied to Christmas trees as Christmas tree ornaments. Further that they are of the type, size and weight of articles usually and ordinarily applied to or hung from archways, doorways, ceilings, fixtures, window shades so that someone may pass underneath and then be kissed.

Lexicographic definitions have also proven to be helpful in determining the breadth and scope of the words "Christmas trees."

*Christmas tree* has been defined:

"A tree, esp. an evergreen, usually decorated and illuminated, used in Christmas celebrations." *Webster's New Collegiate Dictionary*, page 147 (1956).

"1. A small evergreen tree used indoors for Christmas festivity, decorated with ornaments, bearing presents, and illuminated on Christmas Eve or Christmas night; a similar large decorated and illuminated evergreen as set up in hotel lobbies, civic centers, etc." *Webster's New International Dictionary of the English Language*, Second Edition, Unabridged, page 478 (1956).

The exhibits 1 to 4 are *not* decorations or illuminants used on Christmas trees nor are they of the type set up in hotel lobbies or civic centers so far as the court is aware. Their chief use according to the undisputed evidence, oral, documentary and by reference to said exhibits 1 to 4, as well as to exhibits 5 and 6, is for purposes *other than as Christmas tree ornaments*.

Dictionary definitions of *mistletoe* are helpful in that they indicate by custom the privilege to kiss women standing under it.

*Mistletoe* has been defined as:

"1. Any of various parasitic evergreen plants with small yellowish-green leaves, yellowish flowers, and waxy white berries, growing on the branches of certain trees. 2. a sprig of such a plant, hung as a Christmas decoration: men are by custom privileged to kiss women standing under it." *Webster's New World Dictionary* (College Edition 1964), page 943.

"1.a A European hemiparasitic green shrub (*Viscum album*), family Loranthaceae, with dichotomously branching stems, thick leaves, small yellowish flowers, and waxy-white glutinous berries. It grows pendent from various trees, esp. the apple. When found on the oak it was held in veneration by the ancient Celts and Teutons and was at all times a ceremonial plant among early European nations, whence probably originated the Christmas custom of kissing under the mistletoe. * * *" *Webster's New International Dictionary* (Second Edition, Unabridged 1935) page 1572.

The evidence as to chief use discloses that the sole witness sells exhibits 1 to 4 throughout the United States to flower, gift, and bakery shops, department stores, supermarkets, drug, jewelry, variety and chain stores, as well as to jobbers who cater to the same class of trade. He also stated that to his knowledge there were no other importers of merchandise represented by exhibits 1 to 4; that in his travels throughout the country, he saw the mistletoe ball items in the same condition as imported, without additions, sold from the counter as hanging ornaments all by themselves, as kissing novelties. He never saw them in the exact condition as imported on Christmas trees.

The court is of the view that plaintiff did negate the presumptively correct chief use of these items as "Christmas tree ornaments," as classified and as contended for by defendant. This conclusion is supported by the recent decision in *Border Brokerage Company, Inc.* v. *United States*, 65 Cust. Ct. 277, C.D. 4089, decided October 14, 1970, appeal pending. That case involved plastic planting bullets, used

chiefly as planting containers for tree seedlings during their germination and initial growth. They were held to be free of duty as plaintiff claimed under TSUS item 666.00 as "agricultural and horiticultural implements not specially provided for," rather than under TSUS item 774.60 as "Other" "Articles not specially provided for, of rubber or plastics" with duty at 17 per centum ad valorem as classified.

In the above cited case the court stated, after quoting Rule 10(e)(i) of the General Interpretative Rules of the Tariff Schedules of the United States, that

> "Chief use is a question of actual fact which must be established on the basis of positive testimony representative of an adequate cross section of the country. *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, 164, C.A.D. 544 (1953); *Voss Int. Corp.* v. *United States*, 61 Cust. Ct. 123, 127, C.D. 3544, 287 F. Supp. 989 (1968).

> "Applying these principles to the case at bar, since the plaintiff claims reclassification under a provision for which chief use must be proved, it is incumbent upon the plaintiff to show not only the chief use of the plastic planting bullets, but also that the plastic planting bullets were chiefly used in the manner demonstrated in the United States at or immediately prior to the date of importation. *United States* v. *S. S. Perry*, 25 CCPA at 287. If the chief use of the controverted merchandise can also be demonstrated to come within the scope of an agricultural implement, within the meaning of item 666.00 of the tariff schedules, the presumption of the correctness of the district director's findings will have been overcome." [65 Cust. Ct. at 281.]

The court then quoted from the case of *Diamond Trading Co., Ltd., et al.* v. *United States*, 54 Cust. Ct. 70, 74, C.D. 2510 (1965), as follows:

> "While the testimony of a single competent witness may suffice, he must be qualified and his testimony must be convincing and not negatived by the samples themselves. *United States* v. *S. S. Perry*, 25 CCPA 282, T.D. 49395; *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325. * * *" [65 Cust. Ct. at 282.]

The testimony of Mr. Bernon in the case at bar shows that he is qualified for he personally had the vision to produce articles such as exhibits 1 to 4. Moreover, his testimony is convincing and not negatived by testimony or by the samples themselves. Their design and construction appear to indicate their use *other than as Christmas tree ornaments.*

Mr. Bernon's testimony discloses that exhibits 1 to 4 are used as hanging ornaments as kissing novelties. There is no contrary evidence. Their use in even a small sector of the United States is sufficient to comply with the "inference that their chief use in one part of the country would be the same as in any other part of the country." ['Cited in 65 Cust. Ct. at 283 in the *Border Brokerage* case, *supra*, from

*A. N. Deringer, Inc.* v. *United States*, 48 Cust. Ct. 138, 141, C.D. 2326 (1962).]

In the above *Deringer* case the merchandise consisted of wooden ladders of unusual design used to pick fruit. Their use was shown in New England alone. The court did not require further proof of chief use and stated:

"* * * We may take judicial notice of the fact that the New England area, whether it be considered large or small by comparative geographical standards, is a place having numerous fruit tree orchards and that fruit growing is an active agricultural pursuit there."

In *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, 100, T.D. 47765 (1935), the court stated:

"We are not unmindful of the rule that in order to establish 'chief use' the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether 'chief use' has been properly established depends upon the issues and the evidence in each case.

"We think it is a proper deduction from the evidence, and from the character of Exhibit 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule."

Under the circumstances presented in this record by the oral evidence and the exhibits 1 to 6, the court finds that the chief use of the imported merchandise is "Other" [than as] "Christmas tree ornaments." The imported merchandise should be held to be dutiable under TSUS item 772.97 with duty at 17 per centum ad valorem, as claimed by plaintiff. The alternative claim under TSUS item 774.60 with duty at 17 per centum ad valorem must therefore be overruled.

Judgment will be entered accordingly.